IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| STATE OF MONTANA,<br><br>    Plaintiff,<br><br>vs.<br><br>DEANDRE L. GULLEY,<br><br>    Defendant. | CV 22-31-BLG-SPW-TJC<br><br>**FINDINGS AND RECOMMENDATIONS OF U.S. MAGISTRATE JUDGE** |

  This matter arises out of *State v. Gulley*, DC-19-1604, a criminal proceeding currently pending in the Montana Thirteenth Judicial District Court, Yellowstone County. Pursuant to 28 U.S.C. §§ 1442 and 1446, the Petitioner, the United States of America, removed to this Court a subpoena duces tecum directed to United States Probation Officers and associated contempt proceedings involving Chief United States Probation Officer Brian Farren ("Farren"). (Doc. 1.)

  Before the Court is the United States' Motion to Quash Subpoena and Motion to Dismiss. (Doc. 11.) The motion is fully briefed and ripe for the Court's review. (Docs. 12-14.)

  For the following reasons, the Court recommends that the United States' Motion to Quash Subpoena and Motion to Dismiss be **GRANTED**.

/ / /

/ / /

1

I.     **Background**

Defendant, Deandre L. Gulley ("Gulley"), is charged with three felony counts in Yellowstone County District Court—deliberate homicide, assault with a weapon, and criminal endangerment. (Doc. 13 at 6.) Neither the United States nor any officer or employee of the United States is a party to the state court proceeding.

At the outset of the underlying investigation into an alleged shooting, the Billings Police Department ("BPD") sought assistance from the United States Probation Office. (*Id.*) At that time, United States Probation Officer ("USPO"), Nickalas Buciuman ("Buciuman"), contacted, now former, USPO Sadie Dallaserra ("Dallaserra") to inform her that a probationer under her supervision had been shot and was not cooperating with BPD. (*Id.* at 6-7.) Dallaserra went to the hospital and, without any other witnesses present, conducted an unrecorded interview in which the probationer purportedly disclosed significant information about the alleged shooting. (*Id.* at 7.) Dallaserra also participated further in BPD's subsequent investigation. (*Id.* at 7-10.)

Based on Dallaserra's involvement in the investigation, Gulley filed a motion to compel production in state court in November 2021, to compel the production of "Information within the Possession of Sadie Dallaserra and the United States Probation Office." (Doc. 13-1.)

Then, in December 2021, Gulley filed a motion for subpoena duces tecum directed to Farren, Dallaserra, and Buciuman seeking the production of various documents from the United States Probation Office.  (Doc. 13-4 at 1-13.)  The subpoena sought twelve categories of information, such as Dallaserra's and Buciuman's "notes, reports, or other written statements" relating to the underlying investigation, documentation relating to Dallaserra's termination as a USPO, supervision records, records pertaining to a photo lineup, and any exculpatory or impeachment information.  (*Id.* at 4-5.)  The state court granted the motion and issued a subpoena duces tecum for the requested information on January 3, 2022.  (*Id.* at 15-17.)

On January 5, 2022, Gulley's counsel sent letters to Farren, Dallaserra, and Buciuman requesting the information sought by the subpoena.  (*See* Doc. 1-4.)  Farren responded on January 18, 2022, denying the request because "it does not satisfy the Federal Judiciary's subpoena regulations, and we are not compelled by law to comply with your subpoena."  (Doc. 1-5.)

On January 24, 2022, the state court issued an order granting in part, and denying in part, Gulley's November 2021 motion to compel.  (Doc. 1-6.)  While recognizing that Dallaserra was a former USPO, the court determined that she had participated in the investigation of the case, and thus, ordered the state to disclose information in Dallaserra's possession or control.  (*Id.* at 9.)  But the court denied

the request for production of information from Farren or Buciuman due to "their minimal apparent involvement in the investigation," and because the court "does not have the authority to require" the disclosure of materials from a federal officer. (*Id.* at 9-10.)

On February 14, 2022, Farren sent Gulley's counsel an email indicating that he had consulted with United States District Judge Susan P. Watters and the U.S. Attorney's Office, and determined that there was no legal requirement to produce the requested materials. (Doc. 1 at ¶ 7.) That same day, Gulley filed a "Motion for Order to Show Cause as to Why Brian Farren Should Not Be Held in Contempt of Court." (*Id.* at ¶ 8.) The state court granted the motion and set the matter for hearing on April 12, 2022. (Doc. 1-7.)

On April 7, 2022, the United States filed a motion to quash the subpoena in state court, seeking to vacate the show cause hearing. (Doc. 1 at ¶ 10.) The state court set the motion to quash for hearing on the same date as the show cause hearing, and did not excuse Farren from appearing. (*Id.* at ¶ 11.) The United States then removed the subpoena duces tecum and associated proceedings to this Court on April 11, 2022. (*Id.* at ¶¶ 14-15.)

/ / /

/ / /

/ / /

## II.     Discussion

### A.     *Touhy* Regulations

It is well established that federal agencies can, by regulation, restrict the testimony of federal employees.  In the *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 468-69 (1951), the Supreme Court held that subordinate federal officers, relying on a validly promulgated agency regulation, could not be held in contempt for refusing to comply with a subpoena duces tecum.  Since that decision, courts considering what are commonly called "*Touhy* regulations" have consistently upheld the validity of federal agency disclosure regulations in the context of state court subpoenas of federal employees.  *See Boron Oil Co. v. Downie*, 873 F.2d 67, 69-71 (4th Cir. 1989) (determining that the doctrine of sovereign immunity precluded state court from compelling an EPA employee to testify in a state court civil action contrary to the agency's duly enacted regulations that instructed the employee not to testify); *Edwards v. U.S. Dep't of Justice*, 43 F.3d 312, 314-17 (7th Cir. 1994) (quashing a state court subpoena, and holding state court did not have jurisdiction to compel the DOJ to produce FBI surveillance reports in a state postconviction proceeding where regulatory authority precluded the request); *but cf. Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 777 (9th Cir. 1994) (distinguishing *Touhy* and holding that sovereign immunity does not limit a federal

5

court's authority to enforce a federal subpoena against named-defendant federal officials).

The federal judiciary has regulations, promulgated under 28 U.S.C. § 604, establishing an administrative process for subpoena requests. *Guide to Judiciary Policy*, Vol. 20, Ch. 8, § 810.20 (2003), https://www.uscourts.gov/sites/default/files/vol20-ch08.pdf. These rules set forth the procedures governing subpoenas issued to U.S. Probation Officers. *Id.* at §§ 810.10(a)(1), 810.40(a). Section 820(a), entitled "Testimony and Production of Records," mandates that "Federal judicial personnel may not provide testimony or produce records in legal proceedings except as authorized in accordance with these regulations." Section 830 details the contents a request for testimony or production of records must contain. Whether a request complies with these regulations is made by the "determining officer," and requests directed to the probation office are determined by the chief probation officer. *Id.* at §§ 820(b), 830(a)(1), 840(b)(3). If a "request does not meet any requirement imposed by these regulations" the determining officer may deny the request and "[i]f the determining officer determines . . . that the federal judicial personnel upon whom the request was made should not comply with the request, the federal judicial personnel . . . must respectfully decline to comply with the request." *Id.* at §§ 850(a),(b).

/ / /

**B.     Analysis**

Here, the state court subpoena seeks the production of materials from U.S. probation officers who are subject to the federal judiciary's regulations. Pursuant to those regulations, Farren, as the Chief U.S. Probation Officer, considered and denied Gulley's request. (*See* Doc. 1-5.) Farren determined that the request did not comply with the subpoena regulations and, furthermore, that there was no legal requirement to produce the requested materials. (*Id.*)

Having acted within the authority granted by the federal judiciary's regulations, a state court does not have authority to compel compliance with the subpoena. A state court order compelling a federal official to comply with a state court subpoena is "an action against the United States, subject to the governmental privilege of sovereign immunity," and unless waived, the state court "lacks jurisdiction to proceed against a federal employee acting pursuant to agency direction." *United States v. Williams*, 170 F.3d 431, 433 (4th Cir. 1999) (internal citation omitted).

In *Williams*, for example, a defendant served a state court subpoena on the FBI, seeking files related to a state court homicide investigation, and the FBI removed the case to federal court. *Id.* at 432. The Fourth Circuit held that the fact that the FBI assisted state authorities in investigating the homicide was not an

exception to the doctrine of sovereign immunity, and the state court did not have jurisdiction to compel the FBI to produce documents. *Id.* at 433-34.

The Ninth Circuit has also held that sovereign immunity bars the enforcement of a state court subpoena, removed under § 1442, against unwilling federal officers. *See In re Elko Cty. Grand Jury v. Siminoe*, 109 F.3d 554, 556 (9th Cir 1997); *Swett v. Schenk*, 792 F.2d 1447, 1452 (9th Cir. 1986) ("[T]he *Touhy* doctrine is jurisdictional and precludes a contempt action regardless of whether [the regulation] is ultimately determined to protect" the information sought.). Therefore, sovereign immunity precludes the state court from exercising jurisdiction to compel production of the subpoena or to hold Farren in contempt.

In addition, when a case is removed pursuant to § 1442, the federal court has "a purely derivative form of jurisdiction." *Arizona v. Manypenny*, 451 U.S. 232, 242 n.17 (1981) ("[I]t is well settled that if the state court lacks jurisdiction over the subject matter or the parties, the federal court acquires none upon removal, even though the federal court would have had jurisdiction if the suit had originated there."). *See also Minnesota v. United States*, 305 U.S. 382, 389 (1939) ("For jurisdiction of the federal court on removal is, in a limited sense, a derivative jurisdiction. Where the state court lacks jurisdiction of the subject matter or of the parties, the federal court acquires none, although in a like suit originally brought in a federal court it would have had jurisdiction.").

Therefore, this Court's jurisdiction is derivative. Since the state court lacked jurisdiction, this Court "acquired no jurisdiction on removal." *Swett*, 792 F.2d at 1451. Hence, the Court has no jurisdiction to consider the merits of Farren's decision and whether he appropriately applied the applicable regulations. This Court only has the authority to quash the subpoena and dismiss the case. *See Louisiana v. Sparks*, 978 F.2d 226, 235-36 (5th Cir. 1992) (quashing subpoenas and dismissing action after removal of state court subpoena proceedings, finding sovereign immunity protected enforcement of the subpoenas); *FBI v. Super. Ct. of Cal.*, 507 F. Supp. 2d 1082, 1090 (N.D. Cal. 2007) ("[B]ecause this Court's jurisdiction is wholly derived from the state court, it must quash the state court subpoenas . . . .").

Whether the information sought is privileged or whether Farren's determination was improper is not properly before the Court, and the Court makes no determination as to the propriety of the United States Probation Office's actions. Farren denied Gulley's request pursuant to the authority of valid federal judiciary subpoena regulations. With no waiver of sovereign immunity, the state court is without jurisdiction to enforce the subpoena or hold contempt proceedings. On removal, this Court acquired no more jurisdiction than that of the state court and is, thus, unable to consider the merits of the subpoenas. Accordingly, the subpoena should be quashed, and the case dismissed.

### III.  Conclusion

Based on the foregoing, **IT IS HEREBY RECOMMENDED** that the United States' Motion to Quash Subpoena and Motion to Dismiss (Doc. 11) be **GRANTED**.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.  D. Mont. L.R. 72.3.

DATED this 30th day of March, 2023.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge